UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ADAM DOUGLAS STEPHENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:17CV570-PPS |
| | ) | |
| NANCY BERRYHILL, Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Adam Douglas Stephens appeals the denial of his application for disability insurance benefits by the Commissioner of the Social Security Administration. Stephens was 35 years old on the date he alleges he became disabled, November 1, 2013. After a hearing on January 26, 2016, an administrative law judge issued a decision on March 15, 2016, finding that Stephens retains the residual functional capacity to perform light work with certain limitations. The ALJ found that Stephens has severe impairments of degenerative disc disease, history of umbilical hernia repair, diabetes, hypertension, hyperlipidemia, obesity, gout, obstructive sleep apnea, depression/bipolar disorder and generalized anxiety disorder. [AR at 27.][1] Stephens previously worked as a die casting machine operator, a recycler, a warehouse worker, a

---

[1] The administrative record [AR] is found in the court record at docket entry 9, and consists of 744 pages. I will cite to the pages of this AR according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

fertilizer driver, a customer service representative and an assistant manager. [AR at 36.]

Stephens asks me to reverse the ALJ's decision and remand for further proceedings by the Social Security Administration. My review of the ALJ's decision is deferential. I must affirm it if it is supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted). I can't reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

When considering the evidence, "an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion.'" *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015), quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). This means that an ALJ's decision must offer an explanation of the rationale from the evidence to his or her conclusions "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

## Discussion

### Treating Psychiatrist Dr. Kalapatapu

Stephens raises two issues in this appeal. First, he contends that the ALJ failed to give appropriate weight to the medical opinion of Dr. Umamaheshwara Kalapatapu, his treating psychiatrist. The opinion in question takes the form of the Mental Impairment Questionnaire Dr. Kalapatapu completed on February 24, 2015. [AR 679-683.] Stephens acknowledges that the ALJ included six non-exertional limitations in his RFC findings, all of which are intended to accommodate Stephens' mental and emotional conditions. [DE 14 at 13.] These included that Stephens is:

> limited to understanding, remembering, [and] carrying out simple, routine repetitive tasks, consistent with unskilled work (defined as occupations that can be fully learned within a short period of time of no more than 30 days, and require little or no judgment to perform simple tasks), with the ability to sustain those tasks throughout the eight hour workday without frequent redirection to task; no sudden or unpredictable workplace changes in terms of use of work tools, work processes or work settings, and if there are workplace changes, they are introduced gradually; only occasional work in close proximity to others to minimize distractions; only casual/superficial/brief interactions with others, including supervisors, coworkers, and the general public, meaning that successful performance of job duties involves primarily working with things or objects and not people although incidental interactions with others or incidental proximity to others is tolerated; no exposure to intense/critical supervision; and is best suited to working alone, in semi-isolation from others, or as part of a small group.

[AR at 29-30.] Stephens agrees that "[t]hese restrictions were consistent with most of the limitations opined by Dr. Kalapatapu" but argues that the ALJ should have adopted

3

more of the doctor's opinions. [DE 14 at 13.]²

These additional opinions of Dr. Kalapatapu (expressed by checking boxes in the questionnaire) include that Stephens is "unable to meet competitive standards" in "sustain[ing] an ordinary routine without special supervision" and has "no useful ability" to "complete a normal workday and workweek without interruptions from psychologically based symptoms" or to "perform at a consistent pace without an unreasonable number and length of rest periods." [AR at 681.] The others are that Stephens has "marked" deficiencies of concentration, persistence or pace, and that Dr. Kalapatapu would anticipate that Stephens' impairments or treatment would cause him to be absent from work more than four days per month. [AR at 681, 682.] Stephens argues that these additional limitations demonstrate that he is unable to maintain competitive work. [DE 14 at 14.]

Because Dr. Kalapatapu is a treating physician, "his opinion on the nature and severity of [Stephens'] medical condition is entitled to controlling weight if it is well supported by medical findings and consistent with other record evidence." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018), citing 20 C.F.R. §404.1520c(a) (2017). Here, instead the ALJ gave only "limited weight" to Dr. Kalapatapu's opinions that Stephens "is unable to meet competitive standards or has no useful ability to function in several areas to do unskilled work." [AR at 35.] The ALJ gave at least six reasons for not fully

---

² I note that the ALJ found Stephens "more limited in social functioning than determined by State agency psychologists" and so "included additional social limitations to consider problems the claimant may have interacting with others." [AR at 35.]

4

crediting Dr. Kalapatapu's opinions.

First, the ALJ questioned the consistency of Dr. Kalapatapu's conclusion that Stephens could manage benefits in his own interest, despite his other conclusions that Stephens had "moderate restriction of activities of daily living, marked limitation in maintaining social functioning, marked limitation of concentration, persistence, pace and four or more repeated episodes of decompensation within a 12-month period, each of at least 2 weeks duration, and he would be absent from work more than four days per month." [AR at 35.] Although the inconsistency the ALJ found might be debatable, this is only the first of the reasons he gives for partially discounting the extremity of Dr. Kalapatapu's opinions. Related to this first reason is the ALJ's later observation that there is a glaring lack of support in the medical record for Dr. Kalapatapu's finding that Stephens had experienced four or more episodes of decompensation, each of considerable length. This quite serious finding is unsupported when the record shows no hospitalizations or visits to the emergency room for mental health issues. [*Id.*]

The ALJ also noted that at the time he rendered his opinion, Dr. Kalapatapu had been treating Stephens monthly for only 6 months and even then reported good prognosis with treatment. [*Id.*] From the beginning, Dr. Kalapatapu repeatedly evaluated Stephens' prognosis as good, [AR at 473, 734, 725, 674, 716, 707, 698, 689, 45], and over the longer course of treatment, improvement was reflected in Dr. Kalapatapu's evaluation of Stephens' condition initially as "severe" [AR at 471, 721, 720] but later as "moderate" [AR at 672, 711, 702, 693, 684, 43]. The ALJ further explained his evaluation

5

of Dr. Kalapatapu's opinion by citing repeated notations in Dr. Kalapatapu's treatment notes that, besides occasional depressed mood or affect, Stephens had normal mental status examinations. [*Id.*, citing AR Ex. 6F, 13F and 14F.] The normal psychiatric examinations reported by Stephens' family doctor are also noted, as well as the "findings by Bowen Center indicating few abnormalities." [*Id.*] These contrary indications by other doctors, the ALJ says, "render[] Dr. Kalapatapu's opinion less persuasive." [*Id.*]

As this explanation demonstrates, the ALJ's weighing of Dr. Kalapatapu's opinions takes into account the duration and frequency of treatment, the consistency of the opinions with the doctor's own record, and whether other medical evidence supports the opinions, all of which are regulatory factors to be weighed under 20 C.F.R. §404.1527(c)(2). As Stephens acknowledges, the ALJ gave considerable weight to Dr. Kalapatapu's opinions to the point of concluding that Stephens' mental health warranted significant non-exertional functional limitations. I conclude that the ALJ gave good reasons for discounting Dr. Kalapatapu's opinions to the extent that they suggested a severity of mental health problems that is at odds with the medical record. The degree to which the ALJ relied upon Dr. Kalapatapu's conclusions about the nature and severity of Stephens' condition is supported by substantial evidence in the record, as explained by the good reasons the ALJ provided in his decision.

**Sleep Apnea and Fatigue**

The other challenge Stephens makes to the ALJ's decision is that the ALJ failed to

6

consider the severity of Stephens' sleep apnea and the resulting fatigue, which he says supported a conclusion that he is unable to sustain full-time competitive employment. [DE 14 at 16.]  It is true that Stephens repeatedly complained to his doctors that he had difficulty sleeping and suffered from fatigue.  [DE 14 at 17.]  The ALJ noted that a sleep study in July 2014 recommended that Stephens regularly use a CPAP machine [AR at 32] because "the application of continuous positive airway pressure at a pressure level of 10 results in control of the patient's obstructive sleep apnea syndrome and oxygen desaturation."  [AR at 415.]  At his hearing before the ALJ, Stephens admitted that he uses the CPAP machine "maybe two to three hours a night, but not like I'm supposed to every night," explaining only that it's "very difficult to get used to."  [AR at 84.]

Before me, the Commissioner's position is that the ALJ's decision is not subject to reversal on this issue because the record discloses that Stephens' impairment of sleep apnea is controlled by the use of a CPAP machine and Stephens is choosing not to comply with that available treatment.  [DE 15 at 8.]  Stephens has filed no reply memorandum responding to that contention.  Although the ALJ's decision does not discuss Stephens' hearing testimony acknowledging his failure to comply with his doctor's recommendation to use the CPAP machine regularly, the record before me does not support a remand for further consideration of the issue, because Stephens' brief fails to acknowledge his lack of compliance and offers no justification for it.  Social Security regulations provide that "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled[.]"  20 C.F.R. §404.1530(b).  This is

7

because "controllable" or "self-inflicted" conditions do not entitle one to benefits. *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006); *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004). Stephens fails to demonstrate reversible error in the ALJ's conclusions concerning his sleep apnea.

## Conclusion

My role is not to determine from scratch whether or not Stephens is disabled and entitled to benefits. Instead, my review of the ALJ's findings is deferential, to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d at 310; *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). After that, I "must affirm the ALJ's decision even if reasonable minds could differ about the ultimate disability finding." *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016). Because substantial evidence supports the Commissioner's findings, they are conclusive. 42 U.S.C. §405(g). For the reasons I've explained, Stephens has not demonstrated that the ALJ failed to build a logical bridge from the evidence to his conclusion that Stephens does not qualify for disability, or otherwise committed reversible error. The Commissioner's final decision must be affirmed.

**ACCORDINGLY:**

The final decision of the Commissioner of Social Security denying plaintiff Adam Douglas Stephens' application for Social Security Disability benefits is AFFIRMED.

The Clerk shall enter judgment in favor of defendant and against plaintiff.

**SO ORDERED**.

ENTERED: August 31, 2018.

    /s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**